**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAEEDA ALSBROOKS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 2:26-cv-03772-JDW** |
| | : | |
| **PHILADELPHIA HOUSING** | : | |
| **AUTHORITY,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

Saeeda Alsbrooks asks me to reconsider my dismissal of this action and to consider her proposed First Amended Complaint. I will do so because she has demonstrated circumstances that justify reconsideration. Upon screening, I will permit one of her claims to proceed and dismiss the others. She can choose whether to proceed on that claim or whether to file a Second Amended Complaint to try to resuscitate the claims that I am dismissing without prejudice.

## I. RECONSIDERATION

Federal Rule Of Civil Procedure 60(b)[1] provides that a party may seek relief from a final judgment, order, or proceeding based on, among other things, "excusable neglect." Fed. R. Civ. P. 60(b)(1). When evaluating whether a party's neglect in prosecuting its case

[1] In her Motion, Ms. Alsbrooks cites Rule 59(e), but that Rule requires a motion within 28 days of the entry of judgment. Ms. Alsbrooks filed on September 28, 2026, even though I dismissed the case on August 17, 2026, so it's too late for Rule 59(e). I will therefore analyze her motion under Rule 60(b).

was "excusable," courts should consider: (A) "the danger of prejudice" to the non-movant; (B) "the length of the delay and its potential impact on judicial proceedings[;]" (C) "the reason for the delay, including whether it was within the reasonable control of the movant[;]" (D) and "whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

I dismissed this case on June 15 and gave Ms. Alsbrooks until July 17, 2026, to file an Amended Complaint. I gave her a one-month grace period, but when she didn't file anything, I dismissed her case on August 17, 2026. She sought reconsideration on September 28, 2026. In her Motion, Ms. Alsbrooks explains that her delay in filing an amended complaint (and presumably in seeking reconsideration) was a function of mental health issues and family trauma. These factors establish excusable neglect for present purposes. There appears to be little danger of prejudice to the non-movants because the case has not yet been served on them. The delay of two months, and its impact on this case, is relatively minor. Ms. Alsbrooks has explained the reason for the delay. And Ms. Alsbrooks appears to have acted in good faith. I will therefore grant her reconsideration motion and screen her Amended Complaint.

## II. STATUTORY SCREENING OF AMENDED COMPLAINT

### A. Factual Allegations

According to the Amended Complaint, Ms. Alsbrooks is an uneducated, disabled, African American resident of a scattered-site public housing property at 740 Martin Street

in South Philadelphia. The Philadelphia Housing Authority owns the property and initially classified it as "CBMO Kingsessing (Scattered Sites – 903)." (ECF No. 10 at 24 (¶ 4).). Ms. Alsbrooks suffers from chronic psychiatric disabilities including depression and PTSD. She is the sole care giver and legal guardian for multiple developmentally disabled dependents who live with her. She and her household members have been victims of violence.

Because of her educational and psychiatric barriers, she asked attorneys, administrators, and managers from PHA to send all complex legal and administrative directives to her brother, Bob Alsbrooks, as an accommodation. Senior Property Manager Bilal Abdul-Hakim allegedly acknowledged her request, though the statements that Ms. Alsbrooks cites to support that allegation do not make that acknowledgement clear.[2]

At some point, PHA issued an "involuntary transfer directive" that required Ms. Alsbrooks vacate 740 South Martin Street and move to a unit located at 1365 S. 54th Street, which is a high-crime area. (*Id.* at 19 (¶ 5).) On June 3, 2025, Mr. Alsbrooks rejected that transfer on Ms. Alsbrooks's behalf because it was an attempt to force Ms. Alsbrooks's household out of a stable neighborhood, which he claimed violated U.S. Department of Housing and Urban Development ("HUD") guidelines. The next day, Mr. Alsbrooks filed a grievance with Mr. Abdul-Hakim claiming a disability rights violation regarding (1) Ms.

---

[2] Mr. Abdul-Hakim told Mr. Alsbrooks, "I understand. … I'll wait for your call." (ECF No. 10 at 19 (¶ 4).)

Alsbrooks's emotional support animal and (2) bad faith. Mr. Alsbrooks also insisted that, due to Ms. Alsbrooks's severe psychiatric impairments, all communication be in writing. Mr. Abdul-Hakim acknowledged receipt of Mr. Alsbrooks's complaint.

On October 6, 2025, PHA conducted a grievance hearing concerning Ms. Alsbrooks's grievance.[3] The Housing Choice Voucher ("HCV") Manager, Jameel Hawthorne, and Mr. Abdul-Hakim stated at that hearing that the "lease termination was structurally canceled because an independent engineering inspection certified 740 South Martin Street as completely safe for occupancy." (*Id.* at 20 (¶ 7.) Despite this safety certification, PHA's Maintenance Superintendent Greg Thorum and Scott Westfall testified that the property was in an imminently dangerous, life-threatening situation, pointing to façade cracks and other structural issues as a pretext to justify denying Ms. Alsbrooks's request to remain in the property. Apparently at the hearing, Mr. Westfall stated he was unable to review Ms. Alsbrooks's psychological evaluation. Mr. Abdul-Hakim admitted that the agency had lost or deleted her Homeownership Purchase Program Enrollment Certificate, and PHA counsel admitted that the structural engineer did not go inside the unit. Ms. Alsbrooks does not state the outcome of this proceeding or specify whether PHA ordered her to vacate the property.

---

[3] There are some allegations in the Amended Complaint about a virtual hearing in September 2025 during which Ms. Alsbrooks and Mr. Alsbrooks were locked out of the hearing due to technical problems. It's not clear if there were some proceedings at that hearing and the hearing in October was a continuation or whether the hearing in September was cancelled and rescheduled for the later date.

Mr. Abdul-Hakim sent a letter dated January 13, 2026, stating, "once both outstanding matters are completed I will immediately withdraw the lease terminations." (*Id.* at 21 (¶ 10).) Mr. Alsbrooks gathered documents to complete the outstanding matters (which Ms. Alsbrooks does not specify), but PHA failed to follow the established accommodation by failing to notify Mr. Alsbrooks of any file deficiency. Between January 13 and 21, 2026, Mr. Alsbrooks wrote to Mr. Abdul-Hakim to detail a range of problems at 740 South Martin Street, including raw sewage backup, missing front façade lighting, compromised door lock frames, collapsing kitchen and bathroom floors, and an unsecured rear gate. Mr. Abdul-Hakim explained that PHA had downsized its workforce and was experiencing maintenance delays but promised to expedite the repairs. However, PHA failed to cure the problems.

On September 12, 2026, Mr. Alsbrooks sent Marcus Moore and Karen Baxter extensive photographic evidence of unremediated problems in the home's plumbing and black mold growth. He alerted PHA that the Philadelphia Department of Licenses and Inspections had scheduled an inspection of the property due to code violations. Mr. Moore decided to abandon maintenance on the house. Mr. Moore and Ms. Baxter failed to log the items that Mr. Alsbrooks identified or to cure the issues. Mr. Alsbrooks also documented to PHA management and local politicians that the Philadelphia Water Department ("PWD") had conducted dye testing on a watermain blockage. He said that that a PHA emergency technician named "Dave" confirmed that the plumbing repairs

were ineffective and that PHA had to retain an excavation contractor to replace the broken sewer line. (*Id.* at 23-24 (¶ 20.) But PHA didn't do anything to prioritize the repairs, which left Ms. Alsbrooks's home with a collapsed sewer main.

To block the sale of 740 South Martin Street to Ms. Alsbrooks under a public housing ownership program,[4] PHA and Mr. Hawthorne sought to reclassify the property at 740 South Martin Street. In a Grievance Hearing Decision dated October 27, 2025, Mr. Hawthorne acknowledged that the property had been converted from public housing status – presumably under the Scattered Site Homeownership program – into a Project-Based Voucher Section 8 program effective October 1, 2025. The grievance decision (1) found that the unit was structurally safe and she did not have to vacate the home, (2) voided the mandatory maintenance relocation order, and (3) secured her right to live in her home. Nonetheless, Ms. Baxter and Mr. Moore issued multiple lease termination notices, citing unverified anonymous neighborhood complaints that her household was a nuisance to the community. PHA used that alleged friction to reclassify 740 South Martin Street from the Scattered Site Homeownership track.

Ms. Alsbrooks also had a conflict with PHA over her emotional support animal. Mr. Abdul-Hakim put in writing that she had been approved to have one in her home after she submitted the application and animal health records and paid the registration fees. Yet on September 11, 2026, Mr. Moore claimed that PHA had no history or verification of

---

[4] *See* 24 CFR Part 906.

the approval. Ms. Alsbrooks attributes this to an internal file destruction that PHA used as a way to manufacture a dispute about her pet and to charge with a violation.

Ms. Alsbrooks also describes crime in the neighborhood, her interactions with the Philadelphia District Attorney's Office, and targeted racial harassment and profiling from "newly arrived Caucasian neighbors" in the gentrifying area. (*Id.* at 27 (¶ 9).) The various Defendants had actual and constructive knowledge of the alleged racial harassment but did nothing about it.

Based on these allegations, Ms. Alsbrooks asserts claims against PHA, Mr. Abdul-Hakim, Mr. Westfall, Mr. Hawthorne, Mr. Moore, Ms. Baxter, and HCV Hearing Coordinator Barbara Kenney. She names the individuals in their individual and official capacities. She asserts claims for disability discrimination under the Fair Housing Act, Section 504 of the Rehabilitation Act ("RA"), and Title II of the ADA (Count I); violation of HUD regulations and the Due Process Clause of the 14th Amendment (Count II); racial discrimination under the Fair Housing Act (Count III); breach of contractual and statutory duties (Count IV); and sex discrimination under the FHA (Count V).

### B. Standard Of Review

Because I have granted Ms. Alsbrooks leave to proceed *in forma pauperis*, I must determine whether the Amended Complaint states a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). That inquiry applies the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Pursuant to that standard, I must determine whether the

Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). That means I must accept the factual allegations in the Amended Complaint as true, draw inferences in favor of the plaintiff, and determine whether there is a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quotation omitted). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. When a plaintiff is proceeding *pro se*, I construe her allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## C. Analysis

### 1. Claims under federal law

#### a. Disability discrimination

Pursuant to the Fair Housing Amendments Act of 1988 ("FHAA"),[5] the FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A). A "handicap" is "a physical or mental impairment which substantially limits one or more of [a] person's major life activities." 42 U.S.C. § 3602(h)(1). Similarly, to state a plausible claim under either the ADA or the RA, a plaintiff "must allege that [she] is a qualified individual with a disability, who was precluded from participating in a program, service, or activity,

---

[5] Pub. L. No. 100-430, 102 Stat. 1619 (1988).

or otherwise was subject to discrimination, by reason of [her] disability." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019) (citation omitted). To allege plausibly that she is a "qualified individual with a disability," a plaintiff must plead facts to show that she has a "disability," meaning "a physical or mental impairment that substantially limits one or more major life activities of such individual ...." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12101(2)(A).

Ms. Alsbrooks alleges she suffers from chronic, unstable psychiatric disabilities including depression and post-traumatic stress disorder managed by a treating psychologist. The Amended Complaint, however, is silent as to whether her psychiatric issues substantially limit her major life activities. *See* 42 U.S.C. §§ 12102(1)(A) and (2)(A). While Congress has provided for a "less searching analysis" of whether a plaintiff is "substantially limited," *Kravits v. Shinseki*, No. 10-cv-861, 2012 WL 604169, at *6 (W.D. Pa. Feb. 24, 2012), merely stating a diagnosis does not meet the pleading standard. *See, e.g.*, *Van Der Poel v. Mannheim Auto Auction*, No. 08-cv-5607, 2009 WL 1754598, *1 (E.D. Pa. June 18, 2009). I will therefore dismiss her disability claims but give her one more opportunity to cure this defect. If Ms. Alsbrooks asserts disability claims again, I caution her that the individual employees are not proper defendants for claims under the ADA or

RA because those statutes do not provide for individual liability. *See Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002).

**b. Sex discrimination**

While the FHA covers sex-based discrimination, Ms. Alsbrooks does not allege any facts that she suffered discriminatory housing, interference, or harassment because of her sex. Ms. Alsbrooks mentions that she and her family have been the victims of violence, possibly sexual in nature. "Although the Third Circuit has not weighed in on this issue, most district courts that have addressed it have found that domestic violence victims are members of a protected class and may bring a claim for housing discrimination under the FHA through a theory of sex discrimination." *Butler v. Sundo Capital, LLC*, 559 F. Supp.3d 452, 457 (W.D. Pa. Sept. 9, 2021). However, such a claim would still fail because she has not alleged that any Defendant discriminated against her *because of* her sex, or that she was treated differently than others outside of her protected class.

A sex discrimination claim based upon claimant's status as a domestic violence requires a plaintiff to plead and prove: "(1) the defendant has adopted a policy regarding victims of domestic violence that has had a disparate impact upon women or (2) the defendant has intentionally discriminated against the plaintiff/domestic-violence-victim *because* she is a woman." *McVicker v. Muskogee Hous. Auth.*, No. 22-cv-108, 2024 WL 4416555, at *8 (E.D. Okla. Oct. 4, 2024). "In the context of a disparate impact claim, status as a domestic violence victim may be an adequate proxy for sex because a policy

unfairly targeting domestic violence victims will largely affect women. But, when considering a disparate treatment claim, status as a domestic violence victim is not a sufficient proxy for sex for the simple reason that not all domestic violence victims are women; plaintiff must still demonstrate that the defendant intentionally discriminated against her based upon her *sex*." *Id.* (citation omitted). I will permit Ms. Alsbrooks to try to assert a sex-based claim in an amended pleading, but she must be mindful of these rules if she tries to do so.

**c. Race discrimination**

The FHA prohibits discrimination based on race, among other things, in a variety of real estate-related transactions. *See* 42 U.S.C. § 3604. A violation of the FHA's prohibition of discrimination can arise from intentional discrimation or from a practice that has a disparate impact on a protected class. *See Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011) (citation omitted). The FHAA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed ... any right granted or protected by section ... 3604 ... of this title." 42 U.S.C. § 3617. "A Section 3617 interference claim requires [allegations] of three elements: (1) that the plaintiff exercised or enjoyed any right granted or protected by [the FHA]; (2) that the defendant's conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct." *Revock v. Cowpet Bay*

*W. Condo. Ass'n*, 853 F.3d 96, 112-13 (3d Cir. 2017) (quotations omitted). Interference under § 3617 may consist of harassment if "it is 'sufficiently severe or pervasive' as to create a hostile environment." *Id.* at 113 (quotation omitted). The regulations associated with § 3617 make clear that the section prohibits acts directed at individuals "because of" their membership in a protected class. 24 C.F.R. § 100.400(c)(2). "Harassment that intrudes upon the 'well-being, tranquility, and privacy of the home' is considered particularly invasive." *Revock*, 853 F.3d at 113 (quotation omitted). A claim under § 3617 does not depend upon a substantive violation of the FHA. *See id.* at 112. The FHA provides for vicarious liability under traditional theories of agency law. *See Meyer v. Holley*, 537 U.S. 280, 284, 286-89 (2003). It also provides for individual liability. *See*, *e.g.*, A*vila v. Acacia Network, Inc.*, No. 24-cv-884, 2024 WL 1659456, at *5 (S.D.N.Y. Apr. 15, 2024).

Ms. Alsbrooks asserts a range of facts that, at first blush, state a potentially viable claim for discrimination or interference based on her race. She alleges that Defendants engaged in racial steering. She also alleges that her newly-arrived White neighbors racially profiled and targeted her, and that Defendants knew about that and adopted it. Collectively, at least for purposes of statutory screening, these allegations, along with the others in the Amended Complaint, suffice to permit a race-based claim to proceed under Section 3617. Once Ms. Alsbrooks serves her Complaint, one or more Defendants can test their viability in a Rule 12 motion or through discovery and summary judgment.

**d. Retaliation**

Section 3617 of the FHA also prohibits "retaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority." *Lloyd v. Presby's Inspired Life*, 251 F. Supp. 3d 891, 904 (E.D. Pa. 2017) (quotation omitted). "To prevail on a § 3617 retaliation claim, a plaintiff must demonstrate that (1) she engaged in a protected activity; (2) the defendant subjected her to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Id.* Ms. Alsbrooks has not pled facts to show that she complained about a discriminatory housing practice to the PHA or that PHA subjected to her an adverse action as result of that complaint. As such, she has failed to state a claim for retaliation under Section 3617. But like her other claims, Ms. Alsbrooks may attempt to replead this claim if she has a good faith basis to do so.

**e. Due process**

A plaintiff may assert a Fourteenth Amendment procedural due process claim under 42 U.S.C. § 1983, which guarantees fair procedures for the deprivation of a constitutionally protected interest in life, liberty, or property. *Zinermon v. Burch,* 494 U.S. 113, 125 (1990). It is not clear from the Amended Complaint whether Ms. Alsbrooks has been deprived of a property interest. On the one hand, she contends that PHA "issu[ed] an obsolete Housing Choice Voucher cutoff notice on August 27, 2026, to execute an extrajudicial eviction of a disabled household." (ECF No. 10 at 29 (¶ 3).) However, she has

not alleged that PHA has evicted her or initiated eviction proceedings. Indeed, she appears still to reside at 740 South Martin Street because she listed the home as her address when she filed this case. She also alleges that in his Grievance Hearing Decision from October 27, 2025, Mr. Hawthorne "declared the mandatory maintenance relocation directive null and void, legally securing her right to remain in her home." (*Id.* at 25 (¶ 5).) As such, her due process claim is not plausible because she fails to allege she was deprived of a property interest because no Defendant did anything that extinguished her property interest. *See Polk v. Kramarsky*, 711 F.2d 505, 508-09 (2d Cir. 1983).

To the extent Ms. Alsbrooks's claim is based on what she describes as "a covert, bad-faith reclassification scheme" to "block the sale" of the property to her (ECF No. 10 at 24 (¶ 4)), Ms. Alsbrooks has failed to state a claim for the same reason—i.e. she has failed to allege that Mr. Hawthorne or any other Defendant deprived her of a property interest. Indeed, by her own admission, Ms. Alsbrooks does not own the home at 740 Martin Street. At most, she was enrolled in PHA's Scattered Sites Homeownership Program and was taking steps to acquire the property. (*See id.* at ¶ 3.) Thus, there was no property interest to extinguish.

**2. State law claims**

Ms. Alsbrooks alleges that the Defendants breached contractual and statutory duties by keeping 740 South Martin Street in a state of disrepair and refusing to correct problems, causing the home to suffer break-ins. She has not alleged the existence of a

contract, but it is possible that she is referring to her lease with PHA or perhaps some other agreement involving the public housing ownership programs. Because these state law claims are undeveloped, they cannot proceed as pled. Ms. Alsbrooks may attempt to include additional facts concerning this Count if she chooses to amend her pleading.

## V. CONCLUSION

I will dismiss the disability and gender discrimination claims, as well as the due process and state law claims. I will permit Ms. Alsbrooks to proceed with her race-based claims under the FHA, and I will give her an opportunity to file a Second Amended Complaint to fix the problems I have identified with her other claims. Alternatively, Ms. Alsbrooks may choose to proceed only on her race-based FHA claims. An appropriate order follows, giving her more information on that choice.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

**JOSHUA D. WOLSON, J.**

November 12, 2026